UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| JEFFREY L. DICKERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-02241-SLD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ORDER

Before the Court is Petitioner Dickerson's application to vacate his sentence pursuant to

28 U.S.C. § 2255, ECF No. 1. For the following reasons, the application is DENIED.

**BACKGROUND[1]**

Dickerson sold crack cocaine regularly to Debra Vankuikien in Kankakee, Illinois, from

2008 until his arrest in September 2010. In August 2010, Vankuiken sought permission from

Dickerson to pay him for cocaine with firearms instead of money. Dickerson agreed, and

Vankuiken gave him five stolen guns in exchange for some crack cocaine. The police then

arrested Vankuiken because they suspected her of stealing the guns. She cooperated with them

and directed officers to the storage unit where Dickerson kept the guns. Authorities discovered

three machine guns (two AR-15s and an Uzi) and two handguns. Later, under the supervision

and at the direction of the police, Vankuiken bought more cocaine from Dickerson, whose

---

[1] This account of the events for which Dickerson was prosecuted is taken from the Seventh Circuit's discussion on consideration of his direct appeal. *United States v. Dickerson*, 705 F.3d 683, 686–87 (7th Cir. 2013). Docket entries in the district court proceedings following his indictment, *USA v. Dickerson*, 2:10-cr-20091-JES-DGB-1 (C.D. Ill. 2011), are cited as "CR ECF No. __."

apartments were then searched. Police recovered 25.6 grams of cocaine from one apartment and 100 grams of crack cocaine and a loaded revolver from the other.

Dickerson was charged by federal indictment on November 3, 2010 with (I) possession with intent to distribute twenty-eight or more grams of a Schedule II controlled substance (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); (II) possession of the two pistols, the rifles, and the revolver in furtherance of the possession with intent to distribute and distribution of the crack cocaine, 18 U.S.C. 924(c); and (III) possessing the handguns, the revolver, and the Uzi after having sustained a felony conviction, 18 U.S.C. § 922(g)(1). Indictment, CR ECF No. 1. On February 9, 2011, the government filed a superseding indictment, CR ECF No. 13, which charged the second count as a violation of both 18 U.S.C. § 924(c)(1)(A) and § 924(c)(1)(B)(ii), the latter of which provides for a mandatory minimum sentence of thirty years' imprisonment for the possession of machine guns in furtherance of drug trafficking crimes. Pursuant to 21 U.S.C. § 851(a), the government filed an information indicating that it would seek to rely on Dickerson's prior drug possession convictions, of which there were three, in seeking an enhanced sentence on Count I of the superseding indictment. Informations, CR ECF Nos. 16, 17.

The case proceeded to jury trial on June 7, 2011. Jun. 7 2011 Minute Entry, CR Docket. The jury found Dickerson guilty on all counts. Jury Verdicts, ECF No. 44. The Court sentenced him to a term of 151 months on Count I and 120 months on Count III, to run concurrently, and to 360 months on Count II, to run consecutively to the other counts as required by 18 U.S.C. § 924(c)(1)(D)(ii). Judgment 2, CR ECF No. 54. Dickerson appealed. *See United States v. Dickerson*, 705 F.3d 683 (7th Cir. 2013). On appeal, he argued that 18 U.S.C. § 924(c) does not cover situations where guns were exchanged for drugs, that the district court erred in so

instructing the jury, and that the government's evidence of the offense date offered at trial did not match the date charged in the indictment. *Id.* at 686. On February 19, 2013, the Seventh Circuit rejected his arguments and affirmed the judgment in whole. *Id.* at 688–94. On October 7, 2013, the Supreme Court denied Dickerson's petition for a writ of certiorari. *Dickerson v. United States*, 134 S. Ct. 166 (2013). Dickerson's application for writ of habeas corpus pursuant to 28 U.S.C. § 2255 followed timely on October 2, 2014.

## DISCUSSION

I.      **Legal Standard on a Motion to Vacate Sentence Under 28 U.S.C. § 2255**

28 U.S.C. § 2255, "the federal prisoner's substitute for habeas corpus," *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012), permits a prisoner incarcerated pursuant to an Act of Congress to seek that his sentence be vacated, set aside, or corrected if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). *See Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) ("As a rule, the remedy afforded by section 2255 functions as an effective substitute for the writ of habeas corpus that it largely replaced."). However, "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal [and was not]." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (citing *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir.2009)), *cert. denied*, 137 S. Ct. 260 (2016). Such procedurally defaulted claims may only be raised on collateral attack if an applicant can show good cause for the omission, and that he was prejudiced thereby. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008).

When presented with a § 2255 motion, a district court must hold an evidentiary hearing on the applicant's claim, and make findings of fact and conclusions of law. 28 U.S.C. § 2255(b). However, "[i]t is well-established that a district court need not grant an evidentiary hearing in all § 2255 cases." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015). The court need not hold a hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Nor must the court hold a hearing when the petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)). However, when a prisoner alleges fact that, if proven, would entitle him to relief, a hearing must be held. *Kafo*, 467 F.3d at 1067.

## II.     Analysis

Dickerson argues that his conviction should be set aside. Pet. 19. In support, he alleges that his counsel's assistance was ineffective (I) because counsel did not conduct an "independent investigation of the facts" before advising him to stand trial, did not adequately advise him about the potential consequences of standing trial, and did not attempt to negotiate a favorable plea deal that would have resulted in the government not filing § 851 notice of enhancement and dismissal of Count II, *id.* at 11–15; and (II) that had he been appropriately advised, he would have pleaded guilty and received a lesser sentence as part of a plea deal, *id.* at 16–17. The government responds that counsel's performance was not ineffective, Resp. 5–7; and that even if the performance was ineffective, Dickerson was not prejudiced by the deficiency, *id.* at 7–9.

Dickerson did not raise the matter of his attorney's ineffectiveness on direct appeal. However, the Sixth Amendment to the Constitution guarantees criminal defendants access to the effective assistance of counsel, *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970), and

"[a]ttorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999). Indeed, "[i]n light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 505 (2003). This is so because the trial record on direct appeal is often not sufficiently developed to decide questions of counsel's ineffectiveness, whereas a district court proceeding under § 2255 is able to expand the record if necessary. *Id*; *see also United States v. Flores*, 739 F.3d 337, 341–42 (7th Cir. 2014) ("By arguing ineffective assistance on direct appeal the defendant relinquishes any opportunity to obtain relief on collateral review, even though a motion under § 2255 affords the only realistic chance of success.").

Whether an attorney has rendered ineffective assistance sufficient to set aside a procedural default is evaluated under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). The test requires a petitioner to show "(1) that his counsel's performance was so deficient as to fall below an objective standard of reasonableness under 'prevailing professional norms'; and (2) that the deficient performance so prejudiced the defense as to deny the defendant a fair trial." *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) (quoting *Strickland*, 466 U.S. at 687–88). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' *Strickland*, 466 U.S. at 691. "When applying Strickland to the facts of a particular case, 'there is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 697) (alteration in original). The right to effective assistance of counsel extends to the plea

bargain process. *Spiller v. United States*, 855 F.3d 751, 755 (7th Cir. 2017) (citing *Martin*, 789 F.3d at 706).

Here, there is no need to address the second portion of *Strickland* (prejudice), or indeed to hold an evidentiary hearing, because Dickerson's allegations, in the form of his signed petition and the affidavits he and his wife submitted, do not combine to show that Dickerson "can provide *some evidence* beyond conclusory and speculative allegations," *Kafo*, 467 F.3d at 1068, that counsel's performance was inadequate.

Dickerson's affidavit itself is vague and contradictory. Dickerson states that "someone" at the Ford County jail, where he was taken shortly after his arrest, "was telling me about a person can plead out and cooperate and they won't get that much time[.]" Dickerson Aff. 1, Petition Exs., ECF No. 3. Having received this information, he claims to have called the office of the Assistant Federal Public Defender assigned to his case, John Taylor, and told the secretary there he wanted to cooperate with the government. *Id.* At some point, Dickerson avers, he met with counsel and "told him what I wanted to do and he said 'OK' and I put my signature on the paper to the Government so I'm telling you that I did put my signature on the paper to cooperate with the Government." *Id.* at 1–2. Later, he alleges, Taylor told him that he "didn't turn [the form] in" because he (Taylor) "didn't trust the Government." All of this transpired, Dickerson avers, before the issuance of the superseding indictment. Dickerson says that he later called the secretary several times and told her to tell Taylor that he "wanted to plead out." *Id.* Then, we are told, "at the last minute before my trial [Taylor] told me to go to trial and I would be able to give back my time on my appeal and that's what I did." *Id.* Had none of this happened, Dickerson avers, he would have pleaded guilty "from shortly after my arrest." *Id.*

Dickerson's fails to allege that counsel's assistance was ineffective.

His claim that he unsuccessfully tried to direct Taylor to plead guilty on his behalf is implausible and belied by the record. Dickerson first explains that he was under the general impression, apparently conveyed by another inmate, that pleading guilty can result in a lower sentence. While he initially had difficulty contacting his attorney, he indicates that he did so and indicated his desire. While he claims that he signed some document, which he believes was supposed to be conveyed to the government to indicate his willingness to plead guilty, he never asserts that he spoke, directly or through counsel, with the government's attorney, or relates any other facts giving rise to the plausible inference that this document was some kind of agreement, or indication of a willingness to agree, that counsel should have conveyed to the government. It is impossible to tell what it might mean that this form wasn't "turned in," or how that might be connected with Taylor's not "trusting" the government. Dickerson's story is incoherent. Furthermore, although he maintains that he wanted to "plead out" both before and after the nondelivery of the mysterious document, he appeared in open court on numerous occasions in the lead-up to his trial, and at no point on the record (or, in his telling, off it) conveyed his desire to plead guilty to the court or to the prosecutor. Dickerson's claim that his attorney frustrated his efforts to plead guilty, and was therefore ineffective, fails both because it contradicts itself and is contradicted by the facts.

Dickerson's claim that he adamantly sought to plead guilty but was frustrated by counsel is cast into further doubt by his explanation that "at the last minute" Taylor was able to persuade him to proceed to trial simply by stating that Dickerson would be able to "give back my time on my appeal" (a phrase whose meaning Dickerson does nothing to elucidate). Dickerson does not

explain what motivated Taylor's advice that he proceed to trial, or what caused him to accept it despite his desire to plead guilty. Nor does he claim that he was coerced into exercising his right to a jury trial—just that he decided to do so upon advice of counsel. Without some showing that that advice was deficient, Dickerson's claim is too vague and implausible to warrant an evidentiary hearing.

Dickerson's sworn petition makes broader allegations, including that counsel advised him to go to trial "without first conducting an independent investigation of the facts, circumstances, pleadings and laws involved," Pet. 12; but offers no explanation of why Dickerson thinks this is so. The petition repeats and amplifies in conclusory language Dickerson's impression that counsel failed adequately to negotiate a plea deal on his behalf, but does nothing further to explain why Dickerson did not then express his desire to negotiate to someone other than his counsel. Indeed, the petition appears to represent that Dickerson received an affirmative offer from the government on the first day of his trial to plead guilty (under what terms, Dickerson does not say), but that he rejected it on advice of counsel, continuing the contradiction in Dickerson's affidavit between claims that he wished to plead guilty and claims that he chose not to on advice of counsel. The petition also differs from Dickerson's affidavit in that it appears to construe Taylor's assurance that he would "'give back' his conviction on direct appeal," Pet. 13, as an assurance that if Dickerson were convicted, that conviction would be reversed on appeal. Dickerson offers no explanation of why Taylor made this startling representation, or what caused him to accept it. Again, the assertion is on the one hand vague and conclusory, and on the other, highly implausible in light of Taylor's apparently otherwise competent representation, and Dickerson's lack of contemporaneous complaint to any other party.

Because Dickerson's claims are "vague, conclusory, [and] palpably incredible rather than detailed and specific," *Kafo*, 467 F.3d at 1067, the court denies his petition without an evidentiary hearing.

A petitioner may only appeal the district court's final order on a § 2255 proceeding if a certificate of appealability issues. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). When a district court enters a final order adverse to the applicant, it must issue or deny a certificate of appealability. 2254 R. 11(a). A certificate of appealability will issue only for those issues upon which "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). If the court issues a certificate of appealability, it must state the specific issues upon which such a showing has been made. 2254 R. 11(a). A "substantial showing" means that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 327. The determination of whether a certificate should issue is not another evaluation of the claim's merits, but rather a determination that some jurists might find the district court's decision debatable, even if "every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.

A certificate of appealability will issue upon the question of whether Dickerson has alleged facts showing ineffective assistance of counsel sufficient to warrant an evidentiary hearing. While, as explained above, the Court concludes that Dickerson has alleged ineffective assistance in terms too vague and conclusory to warrant a hearing before denial, the Court recognizes that jurists of reason might debate whether such a hearing is required, at which testimony from Dickerson or his counsel might be adduced.

**CONCLUSION**

Accordingly, Petitioner's motion for § 2255 relief, ECF No. 1, is DENIED. A certificate of appealability shall issue on the limited question of the Court's dismissal of Dickerson's claim without a hearing, as explained herein.

Entered this 6th day of June, 2017.

s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE
